## Case No. 10,933.

PENN v. INGHAM.

[3 Wash. C. C. 90.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1811.

### EJECTMENT—LIMITATIONS.

1. The order of the proprietaries to survey the land in controversy, was dated in August, 1773; and the survey was made, and returned into the land office, in October, 1774. The defendant claimed title by possession in 1789, and subsequent settlement and improvement. This ejectment was brought in 1805. The objection to the plaintiff's title was, that all the lines of the tract had not been run, and that the plaintiff was barred by the statute of limitations. The defendant, who appears with no title, except possession and improvement made after the survey, who is a mere intruder on land long before appropriated, is not a person whom the laws of the state favour.

2. In 1774, and long afterwards, there was no positive law requiring the surveyor to make an actual survey, by running and marking all the lines; if, from old lines and natural boundaries,

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

the necessity to run all the lines did not exist, no objection could legally be made to the survey.

[Cited in brief in Billon v. Larimore, 37 Mo. 384.]

3. The act of limitations did not begin to run, until the plaintiff's lessor was ousted, or adversely kept out.

4. The meaning of the act of the legislature of Pennsylvania, of 26th March, 1785, section third, is this:—If, at the time the law passed, a person was disseised, he was bound to bring his ejectment within fifteen years. But if he was afterwards disseised, the act of limitations, which would begin to run, would not be a bar in less than twenty-one years.

The plaintiff [Penn's lessee] proved an order of the proprietors to the surveyor, to lay off 10,000 acres for the proprietors, on both sides of Wyaloosing creek, and east of the Susquehanna, dated August, 1773; for which, a warrant to the surveyor general issued, in September, 1773; and a survey was made, on the 4th, 5th, and 6th of October, 1773, and returned into the land office, on the 31st of October, 1774. The evidence of the return, was an abstract from a book, remaining in the surveyor general's office, containing a list of deputy surveyors' returns, certified to be a true copy, by the surveyor general. The entry is thus: "31st of October, 1774, Charles Stewart to John Lukens. The Hon. Proprietaries, 3,520 acres, 1l. 17s. 6d." Proof was given, that this is the usual evidence of a return of survey to the surveyor general, by a charge against the deputy who made the survey; and the act of assembly of 9th April, 1781 (section 3), making the book from which this extract was taken, a book of record. The evidence was objected to, but admitted by the court, to be left to the jury, as evidence of a return. Evidence was given to prove that this manor, called Dundee, has, since the year 1774, been always called and reported "a manor." Strong evidence was given to show, that this manor was regularly surveyed on the ground; positive, as to the line on Susquehanna, and all the lines on the north of Wyaloosing, it being called for, and adjoined by John Shee on the east, and its calling for one Smith, on the line from Susquehanna, crossing the creek and running south. The defence was, that the survey had not been regularly made on the ground, and the lines actually run on the south of the creek; and to prove this, one of the chain carriers, who, at one time went with the deputy surveyor to make this survey, stated, that the surveyor did not then cross to the south of the creek. Two other witnesses stated, that they had, within a few years past, made ex parte surveys of the manor, and could not find marked lines on the south side; but, it appeared that one of them missed one of the corner trees, and the other, who found an old line on the south, did not follow it, because it was not in the precise direction of another line, at the extremity of the number of poles called for, but two

poles short of it. The plat made by one of these surveyors, was read without opposition. The other, ran pretty nearly the courses and distances, on the south, which extended about six miles, in all, and hit the beginning tree on the river. The defendant set up no title but possession, in 1789, and a subsequent settlement and improvement. The lessors of the plaintiff, were in this state in 1785 and 1787. This ejectment was brought in 1805; and it was contended, that the plaintiff was barred by the act of limitations, the suit not having been brought within fifteen years after the 26th of March, 1785, when the law passed, under the third section, or within twenty-one years from the year 1774, when the plaintiff's title accrued, they being then in Pennsylvania.

WASHINGTON, Circuit Justice. There is nothing in the objection of the act of limitations. It never began to run, until the plaintiff was ousted, or adversely kept out, which was not prior to 1789; and from that time, the plaintiff was not barred, before twenty-one years had run out. The meaning of the law is this:—If, at the time it passed, a person was disseised, he was bound to bring his action within fifteen years. But, if he was afterwards disseised, the act of limitations, which would then begin to run, would not be a bar, in less that twenty-one years. In this case, therefore, the suit was brought long within the twenty-one years from the time of the ouster, if, in fact, there was one.

WASHINGTON, Circuit Justice (charging jury). The only contested point is, whether the survey of this manor, was duly made within the true meaning of the act of 27th November, 1779. The other requisites of the eighth section are not contested. The plaintiff appears with a regular paper survey, made, and returned, by a proper officer, and he is told by the defendant, who does not pretend to any title, other than that of possession, settlement, and improvement, made sixteen years after the survey of the manor was made, that this survey was not regularly made. If he set up a right in himself, by survey or settlement, when the plaintiff's survey was made, there might be some reason, in a defendant thus circumstanced, making such a defence. But it seems strange, that a mere intruder (for such is the defendant, since his settlement being made upon land, then, and long before appropriated, he is not one of those persons whom the laws of this state favour), should be permitted to protect his possession, by questioning the regularity of the plaintiff's survey. At the time that survey was made, and long afterwards, there was no positive law of this state, which required that the surveyor should make an actual survey, by going on the ground, and running and marking all the lines. There was a propriety, and even a necessity, that

this should be done, in cases where the lines could not otherwise be laid down; and this, the public, and particularly the individual whose warrant was to be located, had a right to expect from this public officer. But, if from former lines, or natural boundaries, known to the surveyor, he was enabled, by running some of the lines, to lay down the other lines of the survey, with accuracy, where was the necessity of going over all the lines on the ground? If the warrant was special, no actual survey was necessary. Even the act of 1785 does not declare a survey void, if not actually made on the ground, although it directs the officer to run and mark the lines on the ground. But, suppose an actual survey necessary to the validity of the title, it is admitted, that the presumption, that this was done, is so strong in favour of the survey returned, as to require clear evidence from the person who would impeach it; in order to repel such presumption; and, we will add, that it should be very clear and direct, where that presumption is fortified by the antiquity of the survey.

The testimony of the chain carrier, in this case, is entirely negative, and proves only that, at the particular time he speaks of, the lines on the south of the manor were not run by the surveyor for whom he carried the chain. But it does not follow, that those lines were not run at the same time by another surveyor, or that they were not afterwards run, or had been previously run; such evidence as this, is too weak, to be set in opposition to the presumption in favour of the survey. As to the evidence of the two surveyors, who could not find the lines on the south of the creek, it ought to have very little, if any, weight in the cause; because the surveys they made were ex parte; and if the plat they produced had been objected to, the court would for this reason have rejected it. If notice had been given to the plaintiff, and accepted, and they or their agent had attended; or if the survey had been made under an order of this court, although the plaintiff had not attended, being duly notified of the time and place; that survey, and the testimony of these men, might have been important. But, even by their own showing, they failed to trace the lines on the south; one of them, by not finding an important corner, and the other, very probably, by not following the old line of marked trees. But what seems conclusive is this, that it would seem impossible for a surveyor, by running the lines on the north of this creek, without having also got the precise course of the creek, to plat by course and distance, the lines on the south, not parallel with those on the north; and to do all this with such accuracy, as for it to turn out, on actual experiment, precisely right, as it appears this did, by the evidence of one of these very surveyors.

Verdict for plaintiff.